IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TIFFINI DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00102-RK |
| | ) |
| KANSAS CITY AREA | ) |
| TRANSPORTATION AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Before the Court is Defendant Kansas City Area Transportation Authority's ("KCATA") motion to dismiss Plaintiff Tiffini Davis' five-count complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 7.) The motion is fully briefed. (Docs. 8, 13, 16.) After careful consideration and for the reasons below, KCATA's motion to dismiss is (1) **GRANTED** as to Counts I, II, and V, and (2) **DENIED as moot** as to Counts III and IV.[1] Accordingly, Counts I, II, and V are **DISMISSED without prejudice**, and the case is closed.

## I. Background[2]

KCATA was created in 1965 pursuant an interstate compact entered between Missouri and Kansas. *See* Mo. Rev. Stat. § 238.010 (1965); Kan. Stat. Ann. § 12-2524 (1982); *see also Hannon-Johnson v. Kansas City Area Transp. Auth.*, No. 4:16-CV-01205-DGK, 2017 WL 2352029, at *1 (W.D. Mo. May 31, 2017). Article III of the interstate compact establishes KCATA as a "body corporate and politic and a political subdivision of the States of Missouri and Kansas." *See* § 238.010, RSMo.; *Local Union 1287 v. Kansas City Area Transp. Auth.*, 848 S.W.2d 462, 463 (Mo. 1993) (recognizing that "KCATA is an independent political subdivision of both Missouri and Kansas").

---

[1] On June 28, 2022, after the KCATA filed its motion to dismiss, Plaintiff voluntarily dismissed her claims for religious discrimination (Count III) and sex discrimination (Count IV). (Doc. 12 (although Plaintiff's notice of dismissal cited "Fed. R. Civ. P. 42(a)(1)," the Court construes the filing as a notice of dismissal pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure).)

[2] For purposes of ruling on Defendant's motion to dismiss, the Court accepts as true the well-pleaded facts asserted in Plaintiff's complaint. *Hafley v. Lohman*, 90 F.3d 264, 267 (8th Cir. 1996).

Plaintiff began working at KCATA in 2013. (Doc. 1 at ¶ 8.) In her complaint, Plaintiff sets forth a number of separate incidents supporting her claims for racial discrimination, race-based retaliation, and a racially hostile work environment:

- Around September of 2016, Keyanna Dawson, a black woman, was terminated from her employment at KCATA. (*Id.* at ¶¶ 19, 20.) Mike Graham, the Chief Financial Officer, told Plaintiff she could "return belongings to [Ms. Dawson]." (*Id.* at ¶¶ 25, 26.) When Plaintiff did so, however, she was suspended and accused of "stealing documents and being insubordinate." (*Id.* at ¶¶ 21, 22.)
- Susan White, a white woman and the Director of KCATA, "falsely accused Plaintiff of cursing at her" and "spread lies about Plaintiff several times throughout [Plaintiff's] employment." (*Id.* at ¶¶ 23, 24, 28, 29.)
- Patrick Hurley, who is a white male and works in the in the Human Resources department, "wrote Plaintiff up for insubordination." (*Id.* at ¶¶ 30-32.)
- Shortly thereafter, Carrie Ivy, another KCATA employee, threatened Plaintiff telling her "if I was in my street clothes you wouldn't be talking that way to me." (*Id.* at ¶ 33.)
- When Plaintiff was reinstated by the union after KCATA attempted to fire Plaintiff in October of 2016, Mr. Hurley subjected "Plaintiff to frivolous write ups, suspension, and termination within a two-month time period." (*Id.* at ¶¶ 34, 35, 37.)
- When Plaintiff returned from maternity leave in February of 2018, she was "falsely accused of disclosing" the salary of another employee, Sherri Shinkle. (*Id.* at ¶¶ 38, 43-46.) Although she was cleared of wrongdoing in the subsequent investigation, Plaintiff was "subject . . . to unwarranted write ups" and she alleges that her work was "nitpicked" more than the work of other white employees. (*Id.* at ¶¶ 47-49.) For example, Plaintiff was reprimanded for helping employees with benefits issues after those employees called her for help and KCATA "failed to help said employees." [3] (*Id.* at ¶¶ 54, 55.)
- Another KCATA employee, Zandra,[4] a black woman, asked Plaintiff for benefits help and "other white employees" made fun of her during a Human Resources meeting for needing

---

[3] Plaintiff alleges that her job duty of answering the phone had been changed such that she no longer handled benefits issues. She states, though, that she helped employees who continued to call her even though she told them she "was not in charge of benefits issues anymore" because KCATA did not help them. (*Id.* at ¶¶ 50-54.)

[4] In her complaint, Plaintiff refers to various individuals by their first name followed by "LNU,"

2

- help and "openly scrutinize[d] Zandra for inability to manager her money." (*Id.* at ¶¶ 57, 58, 59, 60.) While Plaintiff had been reprimanded "for disclosing [Ms. Shinkle]'s salary," these employees were not reprimanded but were "allow[ed] . . . to openly discuss Zandra['s] money management." (*Id.* at ¶ 62.)

- In or around September of 2019, Ms. Shinkle sent emails "about being scared of Plaintiff because Plaintiff has 'goons.'" (*Id.* at ¶ 67.) Ms. Shinkle was then promoted to Manager of Human Resources and Plaintiff was moved out of Human Resources and became an "Operations Support Specialist for Transportation." (*Id.* at ¶¶ 68, 69.)

- In October and November of 2018, Ms. Shinkle "accus[ed] Plaintiff of costing the company money by fraudulently paying Cheryl Hooker." (*Id.* at ¶ 71.) While Plaintiff was cleared in the subsequent investigation, the investigator told Plaintiff "to watch out because HR has something against [Plaintiff]." (*Id.* at ¶¶ 72-74.)

- Plaintiff emailed her supervisor and the Chief Operating Officer, the "top managers" in the office, to report retaliation and discrimination. (*Id.* at ¶¶ 13, 75, 76.) She did not receive any "feedback" from them and no investigation was conducted regarding Plaintiff's report. (*Id.* at ¶ 77.) Instead, the next day after making her report, Plaintiff was "subject[] . . . to another investigation for filling out a W4 in the system." (*Id.* at ¶ 78.) Plaintiff was again cleared of wrongdoing and alleges that she "had filled out W4 in such manner for years." (*Id.* at ¶¶ 79, 80.)

- After reporting her supervisor for sexual harassment (which led to his termination), "Defendant taped [hundreds of copies of Plaintiff's W2 form] with her social security number to the walls," and when Plaintiff tried to remove them, she was "wr[itten] up . . . because Plaintiff was supposed to wait for HR to take them down." (*Id.* at ¶¶ 85, 87-91.)

- Shortly thereafter, Ms. Shinkle was promoted to "Chief of HR" and Plaintiff was told "she better watch out for her job." (*Id.* at ¶¶ 92, 93.) Ultimately, though, Plaintiff's role was changed so she "could not interact with HR at all." (*Id.* at ¶ 95.)

- In March and April of 2020, "Lewis" changed Plaintiff's job description and duties "to do KPI reports and to look at budgets related to overtime and request[s] off." (*Id.* at ¶¶ 96, 98.) The previous employee who held those job responsibilities had a "director" title. (*Id.*

---

apparently standing for "last name unknown." The Court will refer to these individuals by their first name as alleged in Plaintiff's complaint. No familiarity or disrespect is intended.

at ¶ 99.) Plaintiff, however, was not given a "director title promotion" when her job duties were changed. (*Id.* at ¶¶ 99, 100.) Plaintiff also alleges that she was not given any training in her new role and when she asked for help, she was told to "figure it out." (*Id.* at ¶¶ 102, 103.)

- In August and September of 2020, Plaintiff's job duties were changed back to budgeting. (*Id.* at ¶ 105.) Plaintiff requested to work from home, but this request was denied. (*Id.* at ¶¶ 107, 108.) Then, in October of 2020, Plaintiff was informed her position would be eliminated and despite receiving positive feedback and reviews in this role, she was not offered any other position or job within KCATA and was instead given severance. (*Id.* at ¶¶ 109-11.)

- Finally, Plaintiff alleges her last check was "short on vacation time" and the payroll clerk would not answer Plaintiff's call until she "called . . . from a blocked number," but even then, the payroll clerk did not give Plaintiff any information on the shortage of vacation time and ultimately "put a hold on [Plaintiff's] check which caused her to bounce some electronic payments." (*Id.* at ¶¶ 112-17.)

## II. Legal Standard

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a petition does not need to include detailed factual allegations, the petition must allege more than a sheer possibility that a defendant acted unlawfully to survive a motion to dismiss. *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (citation omitted). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Packard v. Darveau*, 759 F.3d 897, 899 n.2 (8th Cir. 2014) (citation and quotation marks omitted). The Court need not accept as true "pleadings that . . . are no more than conclusions." *Iqbal*, 556 U.S. at 679.

## III. Discussion

Fundamentally, this is an employment discrimination case. Specifically, Plaintiff asserts claims against her former employer (KCATA) relying on her rights against racial discrimination, race-based retaliation, and a racially hostile work environment in the workplace protected by 42

4

Case 4:22-cv-00102-RK   Document 18   Filed 08/09/22   Page 4 of 9

U.S.C. § 1981. Section 1981 guarantees the right to contract to all persons "as is enjoyed by white citizens." § 1981(a). In this way, § 1981 protects against racial discrimination, race-based retaliation, and a racially hostile work environment in the context of one's employment. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976) (finding § 1981 applies to racial discrimination in private employment "against whites as well as nonwhites"); *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) ("§ 1981 prohibit[s] employers from retaliating against employees for opposing racial discrimination"); *Anderson v. Durham D&M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010) (analyzing merits of § 1981 claim for racially hostile work environment). By its terms, § 1981 applies to "nongovernmental discrimination and impairment under color of State law." § 1981(c).

In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), on which KCATA relies, the Supreme Court examined the text and history of § 1981 and 42 U.S.C. § 1983 (including these statutes' precursors, the Civil Rights Act of 1866 and the Civil Rights Act of 1871) to conclude "the explicit remedial provisions of § 1983 [are] controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Id.* at 731. In other words, "[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell N. Band Boosters Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998) (citing *Jett*); *accord Chism v. Curtner*, 619 F.3d 979, 983 (8th Cir. 2010) (claims against state actors for discrimination under § 1981 "must be asserted through § 1983") (citation omitted), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). As the Eighth Circuit has explained:

> Section 1983 provides a cause of action to any person deprived of a federal right by someone acting under color of law. One such right is the ability of all persons, regardless of race, "to make and enforce contracts." 42 U.S.C. § 1981. The protections offered by § 1981 include a government employee's right to be free from racial harassment.

*Ellis v. Houston*, 742 F.3d 307, 318-19 (8th Cir. 2014) (other citations omitted). Thus, a claim by a government employee for racial discrimination, retaliation, or hostile work environment alleging the government employer violated § 1981 must be brought as a civil rights claim under or pursuant to § 1983.

Here, KCATA argues that Plaintiff has not adequately pleaded a civil rights claim under § 1983 because (1) the complaint does not mention § 1983, and (2) Plaintiff has not pleaded "the existence of an official KCATA policy or custom leading to Plaintiff's injuries." (Doc. 8 at 7.)

5

First, the Court disagrees with KCATA's argument that because the complaint does not mention § 1983, Plaintiff has necessarily failed to state a claim to remedy alleged violations of § 1981 by her former (government) employer.

As Plaintiff recognizes, Rule 8 of the Federal Rules of Civil Procedure adopts a pleading regime of "notice pleading," under which plaintiffs need not plead specific facts but only must plead facts necessary to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) (citation and quotation marks omitted). More importantly, although not cited by either party here, in *Johnson v. City of Shelby*, 574 U.S. 10 (2014), the United States Supreme Court expressly rejected the argument that a plaintiff must specifically invoke § 1983 in a civil rights complaint to survive a motion to dismiss for failure to state a claim. In *City of Shelby*, decided after *Iqbal* and *Twombly*, the Supreme Court soundly rejected a requirement by the Fifth Circuit that "complaints expressly invoke § 1983" or face dismissal. *Id.* at 11. The Supreme Court explained that the federal pleading standard only requires a sufficient factual basis to support a claim for relief, not more and, recognized that the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* (citations omitted).

Here, Plaintiff alleges that KCATA violated § 1981 because it subjected her to unlawful race-based discrimination, retaliation, and hostile work environment. After *City of Shelby*, KCATA's argument that Plaintiff's complaint fails to state a claim because the complaint "does not mention § 1983" is simply without merit.

KCATA also argues Plaintiff fails to adequately plead a § 1983 claim to the extent she does not plead the existence of "an official KCATA policy or custom leading to Plaintiff's injuries." It is well established that political subdivisions (like KCATA) "may not generally be held vicariously liable under section 1983 for the unconstitutional [or unlawful] acts of its employees," but "may be held liable for the unconstitutional [or unlawful] acts of its officials or employees when those acts implement or execute an unconstitutional [or unlawful] policy or custom of the subdivision." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (other citation omitted); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994). In *Jett*, the Supreme Court explicitly held this same standard applies to § 1983 claims based on violation of § 1981. 491 U.S. at 735-36 (recognizing that for plaintiff to succeed on § 1981 race-discrimination claim brought under

6

§ 1983, he "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases"); *see also Williams v. Jackson Cty. Dep't of Corrs.*, 23 F. App'x 619, 620 (8th Cir. 2001) (affirming dismissal of § 1981 discrimination claim under *Monell*).

In this context, the Eighth Circuit has explained that a "policy" for *Monell*/political subdivision liability under § 1983 means "an official policy, [or] a deliberate choice of a guiding principle or procedure made by the . . . official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citation omitted). Additionally, a "custom" means:

> (1) [t]he existence of a continuing, widespread, persistent pattern of [unlawful] misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]he plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation.

*Id.* (cleaned up). Stated differently, *Monell*/political subdivision liability under § 1983 may be established based upon "misconduct so pervasive among non-policymaking employees . . . as to constitute custom or usage with the force of law." *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998) (citation and quotation marks omitted). In any case, the custom or usage must have "become so 'permanent and well settled' as to have the effect and force of law. *Jane Doe A ex rel. Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 646 (8th Cir. 1990) (quoting *Monell*, 436 U.S. at 691). In sum, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the [political subdivision]," but

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the [political subdivision] was the "moving force" behind the injury alleged. That is, a plaintiff must show that the [political subdivision] action was taken with the requisite degree of culpability and must demonstrate a causal link between the [political subdivision] action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

Here, Plaintiff does not allege the discrimination, retaliation, and hostile work environment of which she seeks relief here was the result of any official policy of KCATA. Instead, Plaintiff alleges the discrimination, retaliation, and hostile work environment she suffered is "part of [an] ongoing and continuous pattern and practice [of] discrimination and retaliation by Defendant, through its employees." (Doc. 1 at 2, ¶ 5.) As stated above, however, liability under § 1983 against

a political subdivision like KCATA cannot arise solely through its employment of the individuals against whom allegations of unconstitutional or unlawful conduct are made. While a plaintiff need not "plead specifics of an unconstitutional custom . . . [she] must allege facts supporting that an unconstitutional policy or custom exists." *Arashiba v. City of Monneapolis*, No. 20-cv-579 (PAM/DTS), 2021 WL 3276305, at *8 (D. Minn. Jan. 21, 2021) (citing *Crumpely-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004); *Doe v. Sch. Dist. of the City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)), *adopted by* 2021 WL 754148 (D. Minn. Feb. 26, 2021).

To demonstrate a permanent and well-settled custom of unlawful activity, civil rights plaintiffs "commonly . . . offer evidence suggesting that similarly situated individuals were mistreated by the [political subdivision] in the same way." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (citation and quotation marks omitted). "[A] plaintiff's failure to allege the existence of similar discrimination as to others seriously undermines her claim that the [political subdivision] maintained a custom of discriminatory personnel practices." *Id.* (citation and quotation marks omitted); *see also Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (recognizing "an isolated incident of alleged misconduct cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983") (cleaned up). And indeed, Plaintiff alleges no such facts here.

In her complaint, Plaintiff appears to rely on several instances where other individuals were treated differently than herself. For instance, Plaintiff alleges she was falsely accused of disclosing another employee's salary while other white employees were allowed "to openly discuss [another black employee's] money management in an open HR meeting, and she was not given a director title promotion when her job duties changed while the previous employee who was responsible for those job duties held a director title. These allegations do not, however, plausibly support Plaintiff's conclusory allegation of KCATA's *custom* of racial discrimination and retaliation. Discussing another employee's "money management" is simply not the same as (allegedly) disclosing another employee's salary. Moreover, like many of the instances of which she complains, Plaintiff alleges no facts that her race played any role where she was not given a director title promotion when her job duties changed, let alone that KCATA had a custom or well-settled practice of discriminating based on race in assigning job duties and job titles. For instance, Plaintiff does not allege the other employee was of a different race than Plaintiff and had received the title promotion when he or she undertook the responsibilities of the position to which Plaintiff

was later promoted or that others similarly situated to Plaintiff have been treated the same as Plaintiff in a discriminatory or retaliatory fashion.

Moreover, to the extent Plaintiff appears to rely on the accumulation of her separate allegations of harassment, discrimination and retaliation to demonstrate a widespread or permanent custom of unlawful activity by KCATA, Plaintiff fares no better. Whether considering Plaintiff's conclusory allegation that she made "several complaints of discrimination" to KCATA management that went unaddressed or the accumulation of the separate instances as set forth above (some of which Plaintiff includes race-based allegations and some of which have no allegations concerning race), Plaintiff's complaint simply does not plausibly give rise to a claim for *Monell* liability. At most, Plaintiff's allegations only give rise to the reasonable inference that KCATA employees (and even those in management) targeted her alone rather than any "continuing, widespread, persistent pattern of [unlawful] misconduct by [KCATA]" as a whole. *Frazier v. City of Omaha Police Dep't*, No. No. 8:18CV539, 2019 WL 582122, at *5 (D. Neb. Feb. 13, 2019) (holding that plaintiff failed to allege *Monell* claim by alleging only that the county "orchestrated an elaborate scheme targeting Plaintiff alone" rather than unlawful misconduct by the county as a whole) (collecting cases), *summarily affirmed*, No. 19-2069, 2019 WL 11717127 (8th Cir. 2019).

Plaintiff has opted to pursue this race-based employment discrimination claim under §§ 1981 and 1983. As a result, because KCATA is a government entity (or more specifically, a political subdivision of the states of Missouri and Kansas), Plaintiff must allege facts giving rise to a plausible claim of *Monell* liability under § 1983. Plaintiff has not done so here. Instead, Plaintiff's complaint only seeks to hold KCATA liable on a theory of respondeat superior or vicarious liability. Therefore, Plaintiff fails to state a claim under § 1983 against KCATA to vindicate her rights protected by § 1981, and accordingly, Counts I, II, and V must be dismissed.

### IV. Conclusion

Therefore, KCATA's motion to dismiss is (1) **GRANTED** as to Counts I, II, and V, and (2) **DENIED as moot** as to Counts III and IV. Accordingly, Counts I, II, and V are **DISMISSED without prejudice**, and this case is closed.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: August 9, 2022